## Case No. 17,357.

### WEIBERG et al. v. The ST. OLOFF.

[2 Pet. Adm. 428.] 1

District Court, D. Pennsylvania. Nov. 30, 1790.

TREATY STIPULATIONS—JURISDICTION OF FOREIGN CONSULS—DISPUTES BETWEEN MASTER AND CREW — CONTEMPT OF COURT.

[1. The stipulation in the treaty with Sweden that its subjects shall enjoy the same privileges in the ports of the United States as are granted to the most favored nation does not give Swedish consuls the same exclusive jurisdiction to adjust disputes between the masters and sailors on Swedish vessels as is granted the French consuls, by special convention, as to French vessels.]

[2. The master of a foreign vessel absolutely refused to answer a citation issued in a suit by a mariner for wages, and confined the suitor in irons on his return from court, subsequently excusing himself by an allegation that the United States courts had no jurisdiction over disputes between the master and seamen of a Swedish vessel. Held, that the master was in contempt.]

[3. Seamen were engaged in the port of Cadiz, a statement being then made to them that they were going to Philadelphia and back to Cadiz, where they would be paid off and discharged. Held, that the action of the master, upon their arrival at Philadelphia, in undertaking, without any new agreement, a voyage to St. Andero, in Spain, and back to Philadelphia, justified the sailors in demanding their wages.]

[4. The seamen were treated by the master with uncommon cruelty, and one of them was confined in jail on land six days, and, when taken on board again. was so abused that he was disabled for three days from doing duty. They then made application in court for relief, and were detained in doing so three hours away from the vessel, and on their return they were pinioned and confined. and threatened with a drawn cutlass; and later. while the suit was pending in court. the master had one of libellants loaded with irons and confined. Held. that the conduct of the master was so cruel and unwarrantable as to dissolve the contract of employment.]

[Cited in The Jerusalem, Case No. 7.293; Davis v. Leslie, Id. 3,639; Bucker v. Klorkgeter, Id. 2,083; The Elwin Kreper, Id. 1,-203; The Belgenland, 114 U. S. 364. 5 Sup. Ct. 864; The Salomoni, 29 Fed. 537.]

On the nineteenth of November, 1790, a libel was filed in this court by Mr. Bankson. one of the proctors of the court. in behalf of Errick Weiberg and Nicholas Casterius, two mariners belonging to the brig St. Oloff. a Swedish vessel under the command of Jonas Holmstedt. The complaint states, that the libellants had entered on board this vessel about the twenty-seventh day of December in the

1 [Reported by Richard Peters, Jr., Esq.]

year 1789, at Cadiz, in the kingdom of Spain, on a voyage from thence to Philadelphia and back again to Cadiz; for the wages of five Spanish milled dollars per month. That the captain had. during the voyage, and since her arrival in this port. treated the libellants with uncommon cruelty, insomuch that it was dangerous for them to remain any longer in his employ: that application had been made in their behalf to Mr. Hellsteadt, the Swedish consul, resident in Philadelphia, who refused to grant them any redress. Whereupon, they pray that their wages may be paid, and themselves be discharged from any further continuance on board the said brig. In consequence of this libel, a citation was issued calling upon Jonas Holmstedt and all persons concerned, to appear and make their objections, if any they have, why a decree should not pass according to the prayer of the libellants. On the morning of the twentieth, the court met according to adjournment, when the marshal made return of the citation, certifying that the same had been duly served. The marshal's deputy at the same time informed the court, that he had first waited on Mr. Hellsteadt, the Swedish consul resident here, and informed him that he was going to serve the citation upon Captain Holmstedt. and shewed the copy of the writ; after which he went on board and presented it to the captain, who, absolutely refused to receive it. saying. in an angry manner, that he was on Swedish ground: that he then left the citation on the binnacle, and came away.

Soon after this Mr. Hellsteadt the consul came into court, and after making some apology for the captain's behaviour, on account of his not understanding the English language, said. that by the laws of Sweden, the captain is vested with supreme command over his crew, who has a right to punish them according to his own discretion, to any extent, short of murder,· or breaking of limbs; and that he neither is. nor can be, answerable to any foreign jurisdiction whatever for the exercise of this power; being accountable to the Swedish courts of judicature alone, on the return of the ship; that it was the captain's duty to refuse obedience to the citation issued from this court. or to do any thing that should seem to acknowledge its jurisdiction in a question between him and any of his crew; and that by the treaty between the United States and the court of Sweden, it is stipulated that the subjects of Sweden shall enjoy the same privileges in the ports of the United States that have been or may be granted to the most favoured nation in amity with them. Inferring. that as by the convention with France, the French consuls in the ports of the United States have an exclusive jurisdiction in the adjustment of disputes between the captains and their mariners, so ought the regulations and discipline on board of Swedish vessels. to be governed by the Swedish laws and customs. without the interference of the courts of the United States.

The judge said, that he thought that the citation should have been attended to with more respect. However, he would take the objection to the jurisdiction of the court under advisement, and examine the treaties referred to. Errick Weiberg one of the libellants, then applied to the judge, suggesting that he was apprehensive of ill-usage if he should remain in the power of the captain. But the judge directed him to continue his duty on board; telling him, that he was under the protection of the court, and believed there was no danger of the captain's using him ill.

As yet no process had issued, except the citation; but as the jurisdiction of the court had been thus expressly denied, the proctor for the libellants moved on the twenty-second to amend his libel. and prayed that process might be awarded and issued against the brig St. Oloff, her tackle, &c. to abide the decree of this court in the cause aforesaid, which was ordered; an amended libel brought forward, and filed, and a writ of attachment issued accordingly.

On the twenty-third, the court being met, the proctor for the libellants complained that, notwithstanding what had been said on Saturday, the captain had seized upon Errick Weiberg, as soon as he came on board from attending on the court, had him put in heavy irons and confined him in the hold of the vessel. Weiberg was then examined, and testified to the cruel treatment he had received, and the irons and chains were brought in and laid before the judge.

On the twenty-fourth the Rev. Mr. Collin, the Swedish missionary resident in Philadelphia, appeared in court. and presented a letter signed by Jonas Holmstedt, in which he says, that "although he could not acknowledge the jurisdiction of the court in the cause brought before it by his seamen, as this would be repugnant to the allegiance he owed to the king of Sweden, yet no affront was intended to the court." At the same time another letter was handed to the judge. signed "Charles Hellsteadt, Swedish Consul," in which he says, that he is responsible in a public line to the king of Sweden; that he had already remonstrated before the court for interfering in the dispute between Captain Holmstedt and two of his seamen. And that he by this letter, protested against any decision that should be made for or against the parties, as the complaint ought to have been made to him. as consul, agreeably to the treaty now in force, between Sweden and North. America.

The judge considered the cruel imprisonment of the libellant, whilst suing for justice, and under the protection of the law, as a manifest contempt of the court. He ordered all proceedings respecting the libel to be laid aside, until this contempt should be examined into, and the rights of humanity vindicated, which he said were paramount to all treaties.

The court was thereupon adjourned for an hour to meet at the state house, the court having hitherto sat at the admiralty office. The attorney of the United States for the district of Pennsylvania, was called upon for his opinion, who attended, together with several gentlemen of the bar, and also some Swedish gentlemen, and others who had heard of the matter. After examining the testimony with respect to Captain Holmstedt's conduct, Mr. Lewis, Mr. Bankson, and Mr. Sergeant, united in opinion, that the treaty with Sweden, as to the point in question, could not be so explained as to give the captain the exclusive jurisdiction he claims. That the words "the most favoured nation." used in the treaty with Sweden, are the words used in all the treaties between the United States and foreign nations in amity with them. and were never interpreted to found a jurisdiction exclusive of, or inconsistent with, the laws of the United States in our own ports. That such a right was never pretended in constructions of the general treaty with France; but that for vesting such a jurisdiction, a special convention was thought necessary, the terms of which have been specifically designated. and not left to inferences, or general construction. That as the captain's conduct, in the instance before the court, could not be supported by his exposition of the treaty, neither could he be justified in refusing obedience to the process of the court. And that this, together with the cruel treatment of the libellant, whilst under the protection of the court, was, and ought to be, deemed a contempt. Adding, however, that some allowance might reasonably be made, in alleviation, for the captain's being unacquainted with the language, and ignorant of the laws and customs of our country.

The judge having attended to these arguments, observed, that the admitting a jurisdiction exclusive of the laws of the United States, was a matter of too serious import to be rested on implication alone. That the words referred to in the treaty with Sweden could not by any construction be supposed to embrace all the objects comprehended in the special convention made with France. That let the question of jurisdiction be what it may, there could be no necessity for the contempt. which Captain Holmstedt had thrown upon the court, or of the violence with which the mariner had been treated. That a citation was the most moderate and unexceptionable process known, for bringing a matter before the court; after which, any plea to the jurisdiction might have been discussed, and would have been considered; but that his unprecedented conduct violated not only the rules of law, but even of common decorum. That he could not consistently with his duty, but consider the absolute refusal of answering to the citation. and the subsequent treatment of the libellant, whilst under the protection of the court, as a contempt, which ought not to pass unnoticed. That as to the amount of any fine that might be laid on this occasion. he was willing to give the apology that had been made its full weight, but that he was

firm in asserting the rights and authority of this court in the matter now before it.

Judgment. "That Jonas Holmstedt has been guilty of a contempt, in refusing to obey the process of the court, and in confining in irons a suitor whilst under the protection of the laws, and applying for the justice of the country. For which offence I award that he pay a fine of twenty dollars, with the costs of prosecution, and stand committed until this sentence is complied with."

On the twenty-fifth, the court met on the business of the libel. Mr. Collin, the Swedish minister, presented a letter to the judge, signed "Jonas Holmstedt," in which he says, that he is willing to answer any questions respecting the prosecution of this libel that may be asked, but cannot enter into any defence of his cause, as this would be a violation of the laws of Sweden, which he is, on his allegiance bound to obey. And then quotes a passage from the Swedish maritime law, directing that "if any disputes on the sea or on shore should arise between the captain and his crew, the parties are not permitted to sue for redress in a place subject to a foreign government," &c. &c. But these letters were not noticed, inasmuch as they uniformly expressed a denial of the jurisdiction of the court.

Mr. Soderstrom, the Swedish consul, resident in Boston, being here, addressed the court and said:—That he was very sorry he had not sooner heard of this disagreeable business, which he would have endeavoured to prevent by all the means in his power. That he could not justify the conduct of Captain Holmstedt with respect to contempt, but as judgment had already past, the error was irretrievable: as to the libel now depending, he prayed the judge to indulge him with a little time whilst he endeavoured to accommodate matters between the parties, by proposing that the libellants should be discharged from the brig St. Oloff, and put on board some other vessel bound for Sweden, and that the wages due to them should be paid over to him (Mr. Soderstrom), in trust for the mariners, until the dispute might be determined in Sweden by a court of that country. The judge approving of this proposal, the court adjourned till further notice.

On the twenty-seventh, Mr. Bankson received a letter from the Rev. Mr. Collin, informing that the proposed accommodation had proved unsuccessful, as consul Hellsteadt, "after the unlimited protest he had before made, could not permit the seamen to be received on board of any other vessel."

The cause then proceeded in course; the witnesses were examined, and the testimony reduced to writing.

On the twenty-ninth, a further progress was made in the cause, and some points of form adjusted.

BY THE COURT. I have duly considered the libel filed in this cause, and have heard

and carefully attended to the testimony of the witnesses produced respecting the same; and I find, that the libellants entered on board the brig St. Oloff, Jonas Holmstedt, master, in December, 1789, in the port of Cadiz, in the kingdom of Spain; that no articles or written contract whatever were presented to the libellants by the captain, or any other person, to engage them in the service of this vessel, or for any designated voyage, except that they were told by the captain that they were going to Philadelphia and back again to Cadiz, where they should be paid off, at the rate of five dollars per month, and there discharged. That after their arrival at Philadelphia, the captain, without any new agreement whatever, undertook another voyage to St. Andero in Spain and back again to the port of Philadelphia, with the libellants on board, where the vessel now is. It also appears that Captain Holmstedt had treated the libellants with uncommon severity and cruelty, especially Weiberg, whom he had confined in jail six days in Philadelphia, before their sailing for St. Andero, and as soon as he was taken on board again, beat him and otherwise abused him, so that he lay three days disabled from doing any duty. That after their return to this port the last time, the libellants made application to a proctor of this court, to sue for the justice of the country in their behalf. That in prosecuting this business, they had been absent from the brig about three hours, and on their return to the vessel, the captain caused them both to be pinioned and confined; threatening them with a drawn cutlass and denouncing vengeance against them. And that afterwards, whilst this cause was before the court and during an adjournment thereof, the captain caused Weiberg, one of the libellants, to be laden with irons and chains, and confined on board the brig.

Under these circumstances, I am of opinion, first, that the deviation to the port of St. Andero in Spain, was such an alteration of the voyage, as might justify the mariner in demanding his wages. And secondly, that Captain Holmstedt's conduct with regard to the libellants, hath been so cruel and unwarrantable by the maritime law, as would of itself have dissolved the contract—the rights of humanity being superior to the specific laws and customs of any nation:

Whereupon, I adjudge and decree, that Errick Weiberg and Nicholas Casterius be discharged from any further services on board the brig St. Oloff; and that they have and receive the sum of eighty-six dollars and twenty cents, in full of the wages respectively due to them. That is to say, to Errick Weiberg the sum of fifty-three dollars and eighty-six and two-thirds cents, and to Nicholas Casterius the sum of thirty-two dollars and thirty-three cents and a third cents. And I do further decree, that the brig St. Oloff, with her tackle, apparel and furniture, or such parts thereof as may be necessary to satisfy this judgment, together with the charges and costs of suit, be

sold by the marshal of this district, according to law and custom, for the purposes aforesaid.

In the case of Willendson v. The Försöket [Case No. 17,682], the practice of the court as to foreign seamen, is fully explained.