BERNARD, (MERRICK v.) See Case No. 9,464.

BERNARD, (RATEAU v.) See Case No. 11,-579.

BERNARD, (UNITED STATES v.) See Case No. 14,584.

---

## Case No. 1,349.

BERNHARD et al. v. CREENE et al.

[3 Sawy. 230.][1]

District Court, D. Oregon. Dec. 12, 1874.

ADMIRALTY JURISDICTION — TORTS ON THE HIGH SEAS — WHEN JURISDICTION WILL BE DECLINED —WHEN NOT.

1. The district courts of the United States, as courts of admiralty, have jurisdiction of torts committed on the high seas, without reference to the nationality of the vessel on which they are committed, or that of the parties to them.

[Cited in The Noddleburn, 28 Fed. 857; Nonce v. Richmond & D. R. Co., 33 Fed. 435; The City of Carlisle, 39 Fed. 815.]
[See, also, Thomassen v. Whitwell, Case No. 13,928.]

2. Such jurisdiction will, in the discretion of the court, be declined in suits between foreigners, where it appears that justice would be as well done by remitting the parties to their home forum.

[Cited in The Noddleburn, 28 Fed. 857; The City of Carlisle, 39 Fed. 815. See, also, The Carolina, 14 Fed. 424; The Montapedia, Id. 427.]

3. But where the suit is between foreigners, who are subjects of different governments, and therefore have no common home forum, the jurisdiction will not be declined.

[Cited in The Belgenland, 114 U. S. 369, 5 Sup. Ct. 867; The Noddleburn, 28 Fed. 857; The City of Carlisle, 39 Fed. 815; The Topsy, 44 Fed. 633.]

[In admiralty. Libel by Otto Bernhard and others against Francis Creene and others for torts committed on the high seas. Defendants except. Exceptions overruled.]

John H. Woodward, for libellants.
William H. Effinger, for defendants.

DEADY, District Judge. The libellants, Otto Bernhard, a subject of the emperor of Germany, Morino Henrico and Morris Rolock, subjects of the king of the Austrias, and Clement d' Baudillion, a subject of the republic of France, bring this suit against the defendants, Francis Creene and David Jenkins, British subjects, and master and mate of the British ship City Camp, for alleged beatings and cruelty committed by them upon the libellants during the voyage from Montevideo to this port. It is alleged in the libel that the libellants shipped on the City Camp at Montevideo about July 29, 1874, for a

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

voyage to the port of Portland, Oregon, where they arrived in due time, and where the said vessel and the libellants and defendants now are.

The defendants except to the libel, and allege it ought not to be maintained for the following reasons: 1. The vessel is a British ship, and the libellants are foreigners, and not citizens of the United States or residents thereof. 2. The alleged wrongs occurred on the high seas, and beyond the jurisdiction of this court. 3. The libellants, prior to the bringing of this suit, voluntarily left the vessel, and "have refused to do any service therein;" and 4. "Defendants are not liable to any suit or demand of the libellants, save and except in the courts and tribunals of Great Britain."

At the same time the vice-consul of her Britannic majesty, at the port of Portland, filed a protest against the jurisdiction of this court for substantially the following reasons: 1. The vessel is a British ship, and the defendants are British subjects, and the alleged wrongs having occurred on the high seas and "beyond the local jurisdiction of the courts of admiralty of the United States, ought of right to be tried in the courts of her Britannic majesty." 2. The detention of the defendants may result in the detention of the vessel and serious injury to her owners, who are British subjects. 3. The vice-consul has, "at the instance and upon the information and examination of libellants and others of the crew of said vessel," entered upon the examination of this matter, and "has initiated and set on foot already, steps to convene a consular court of inquiry into the various matters and things in said libel alleged;" and that the trial of this cause in this court "might, and would call in question the official actions of a British consular court in regard to British subjects, and that such court, for any such official actions, is alone responsible to its own government."

The libellants answer the protest of the vice-consul, denying his right to interfere in their behalf; that they desired to submit the matter in controversy to any consular court; that any such court had been convened or taken any action in the premises, or was competent to give the relief sought; and as to the rest of the allegations in the protest they aver a want of knowledge in the premises, but supposing them to be true, say they are immaterial, and constitute no defense to this suit.

The case was heard on the exceptions and protest. The former are in the nature of special demurrers and set up no new fact. The additional facts set up in the protest, so far as they are denied or qualified by the answer thereto, are not before the court. The exceptions and protest occupy substantially the same ground, and the questions arising upon them will be considered together.

Two questions arise in the case and were argued by counsel: 1. Has this court jurisdiction of a tort committed upon the high seas? 2. Is this a case for the exercise of such jurisdiction, notwithstanding the protest of her Britannic majesty's vice-consul.

The jurisdiction of this court in cases arising ex delicto, depends upon locality—the place where the cause of action arises. Its jurisdiction in this respect extends to the high seas, without reference to the nationality of the vessel on board of which the tort may have been committed or that of the parties to it.

The constitution provides, (article 3, § 2,) that "the judicial power shall extend * * * to all cases of admiralty and maritime jurisdiction;" and section 9 of the judiciary act [Sept. 24, 1789] (1 Stat. 76) [c. 20] provided that "the district courts * * * shall also have exclusive original cognizance of all civil cases of admiralty and maritime jurisdiction * * * within their respective districts, as well as upon the high seas."

" 'Cases of maritime jurisdiction' must include all maritime contracts, torts and injuries, which are in the understanding of the common law as well as the admiralty, 'causae civiles et maritimae.' " De Lovio v. Boit, [Case No. 3.776.]

"Admiralty jurisdiction in cases of tort depends entirely upon locality. * * * That torts committed upon the high seas are within the jurisdiction of admiralty is certain." 2 Pars. Shipp. & Adm. 247.

In cases of tort, jurisdiction "is exclusively dependent upon the locality of the act. Maritime torts are such as are committed on the high seas." Thomas v. Lane, [Case No. 13,902.]

"Cases of tort on the high seas, super altum mare, have always been held, even in England, to be within the jurisdiction of the admiralty." Ben. Adm. § 308. "Cases of assault and battery, imprisonment, or other personal injury or ill usage, arising between master or officers on the one hand, and seamen or passengers on the other, are clearly within the admiralty and maritime jurisdiction." Id. § 309.

In general, an action in personam for an injury to person or personal property is transitory, and may be maintained in the courts of any country where the parties may happen to be, unless the law of such country otherwise provides. There is nothing in the fact that the wrong was committed without the territorial limits of the sovereignty to which the court belongs, or in the alienage of the parties, which, of itself, prevents the court from taking jurisdiction.

Congress has given this court jurisdiction of "all cases of admiralty and maritime jurisdiction," whether arising within the territorial limits of this district or "upon the high seas." That includes this case. It is a cause civil and maritime, and arose "upon the high seas." There is no intimation in the act granting the jurisdiction that the parties to the case must be American citizens. Neither is any such limitation of the jurisdiction suggested by any of the authorities cited.

The case of U. S. v. Kessler, [Case No. 15,528,] cited by counsel for defendant upon this question, is not in point. That was an indictment for robbery and piracy upon the high seas committed on board a foreign vessel. The court held, that under the act of congress defining and providing for the punishment of such offenses, it had not jurisdiction when the offense was committed on board a foreign vessel. Now the judiciary act (supra) does not confer jurisdiction upon the district courts of all crimes committed upon the high seas, as in the case of causes civil and maritime, but only of such as shall be cognizable under the authority of the United States; or in other words, of only such crimes as congress shall define and provide for the punishment of.

There is no doubt of the jurisdiction of the court. Is there anything in the circumstances of the case which should induce the court to decline the jurisdiction? In Pars. Shipp. & Adm. 226, the rule is stated as follows: "In this country it seems to be settled, after some controversy, that our admiralty courts have full jurisdiction over suits between foreigners, if the subject-matter of the controversy is of a maritime nature. It is, however, a question of discretion in every case, and the court will not take cognizance of the cause, if justice would be as well done by remitting the parties to their home forum."

In The Russia, [Case No. 12,168,] the court took jurisdiction of a libel for collision in the harbor of New York, between an Austrian and a British ship. In the course of the opinion, Blatchford, J., said, "The principle upon which the court of admiralty proceeds in determining, in any case, whether to exercise such jurisdiction or not, is to inquire whether the rights of the parties will best be promoted by retaining and disposing of the case, or by remitting it to a foreign tribunal." 194 Shawls, [Id. 10,521.] I am not aware that jurisdiction in case of collision, has ever been declined by any court of admiralty, either in the United States or Great Britain, because the two colliding vessels were the property of foreign subjects."

In The Jupiter, [Case No. 7.585,] the court took jurisdiction of a libel for collision upon the high seas between two foreign vessels, whose owners were subjects of foreign governments and residents of foreign countries.

Admitting for the present, the proposition of counsel for defendants, that the libellants must be regarded as British subjects because they shipped as seamen on a British vessel, what is there in the circumstances of this case, which requires the court to decline the jurisdiction? The libellants have performed their contract with the ship and been dis-

charged from it. The voyage so far as they are concerned, is at an end. It neither began nor ended in a British port.

On the voyage, the defendants were guilty as alleged, of gross personal wrongs to the libellants. To decline the jurisdiction and require the libellants to follow the defendants to a British port, would be a mockery of justice. The voyage of the libellants terminated at this port by the contract of the parties. Where the voyage is broken up or at an end, a court of admiralty never declines to exercise jurisdiction in a suit by the seamen for wages earned or wrongs suffered during the same.

But these libellants are not British subjects in fact, nor is there any reason or rule of law which requires this court to so regard them in this suit. In The Two Friends, 1 C. Rob. Adm. 271, which was a suit against an American ship and cargo for salvage, Sir William Scott denied that British subjects who had shipped on this vessel in an American port for the voyage to England, were to be regarded as American seamen.

As to the protest of the vice-consul, I do not find in it any sufficient reason for declining the jurisdiction. He is not the representative of the libellants, nor authorized to speak for their governments, because they are not British subjects. Practically they are residents of and domiciled in this country. They came here from the Argentine republic on a voyage which, as to them, terminated here. The parties cannot be remitted to a home forum, for being subjects of different governments there is no such tribunal. The forum which is common to them both by the jus gentium is any court of admiralty within the reach of whose process they may both be found. Such is this court.

Neither is the probable detention of the vessel any reason why this court should decline to do justice to these suitors. If the owners have committed their vessel to the care of a master and mate who are detained in foreign ports to answer for injuries done to third persons, it is their misfortune—it may be their fault—certainly it is no fault of these libellants, and they ought not to suffer for it or be delayed or hindered on account of it, in seeking redress for their alleged wrongs.

The court which the consul is about to organize, to inquire into these matters, has not yet been organized, and if it was a case of concurrent jurisdiction, the jurisdiction of this court having first attached would be thenceforth exclusive. But this consular court, or rather "naval court," as it is called in the regulations, has no jurisdiction over this claim of the libellants or power to give them relief. It is a court or board of inquiry, convened for the purpose of ascertaining whether certain crimes against British law have been committed on the vessel, and if so, send the accused parties, with the witnesses, home for trial. Suppose this naval court find that the defendants were guilty of an aggravated assault or assaults upon the libellants, and is able to send them home for trial, how does that affect the claim of the libellants? The defendants may be required to answer both civiliter and criminaliter for acts injurious to others. In the one case, the proceeding is a civil suit by the party injured for damages for the injury. In the other, it is a prosecution by the public to punish the party for the commission of an offense against society. The trial of this suit in this court in no way "calls in question the official action" of such naval court, even if it had already taken action in the premises. For the purpose of which it will inquire into the conduct of the defendants towards these libellants, this court has no right to take cognizance of the matter. On the other hand, concerning the redress sought to be obtained by this suit against the defendants on account of such conduct, that tribunal has neither duty nor authority.

In Patch v. Marshall, [Case No. 10,793,] the court took jurisdiction of a libel for a tort by a seaman against the master of a British vessel, notwithstanding the protest of the British consul: "That an investigation of some of the alleged causes of damages must call in question official acts and conduct of a British functionary in regard to British subjects, for which he is responsible only to his own government." In passing upon this point, the court, Curtis, Circuit Justice, says: "It is true this court should not call in question a British consul for his official acts respecting the crew of a British vessel in a foreign port. * * * But it does not follow that the conduct of the master of such a vessel, in procuring the official intervention of the consul, upon false allegations, to the injury of an American citizen, by imprisonment in a foreign jail, is not to be here investigated.

Upon the whole, I think this is a very clear case in favor of exercising the jurisdiction. In the language of Patch v. Marshall, supra, "to require these libellants to follow these defendants over the world, until they can find them in a British port would practically deprive them of all remedy. I do not think any considerations of public convenience, or the comity extended by the courts of admiralty of one country to those of another, have any applicability to such a case."

The protest and exceptions are overruled.