## THE KAROO.

## JOHNSON et al. v. THE KAROO.

### (District Court, D. Washington, W. D. February 15, 1893.)

1. SEAMEN'S WAGES—BRITISH VESSEL—JURISDICTION.
    A British vessel was libeled for seamen's wages at a port where there was no British consul. The nearest British consul had declined to interfere. Two of the libelants were American citizens. All but three of the crew were not lawfully bound by any contract of shipment. *Held*, that the court was justified in assuming jurisdiction of the case.

2. SAME—SHIPPING ARTICLES—INFORMALITY—RIGHTS OF SAILORS.
    Where seamen on a British ship did not sign articles before the British consul, but were taken aboard the vessel by a boarding-house master, who wrote their names in the shipping articles, after which they served aboard the ship, but did not complete the voyage described in the articles, *held*, that the articles were not binding as to voyage or term or rate of wages; that the men could leave the vessel at any port without becoming deserters, and were entitled to recover on a *quantum meruit* for services performed.

3. SAME—KIDNAPPED SAILORS—RATE OF WAGES.
    Where it clearly appeared that sailors were inveigled aboard a ship, and compelled to serve against their will, *held*, that the master could not fix the rate of their wages, but the court would fix it anywhere within reasonable limits; and there being some evidence that $30 per month was the highest rate at their port of shipment at the time of shipment, and also that their fare aboard ship was bad, *held*, that they should recover at the rate of $30 per month.

4. SAME—RIGHTS OF SEAMEN—INSUFFICIENT FOOD.
    The evidence showing that certain sailors, lawfully shipped, were ill treated aboard the vessel, and were deprived of proper food and lime juice or other antiscorbutics, *held*, that it was a breach of the ship's contract, entitling the men to leave the vessel, though the negligence might not have been that of the master of the ship, but of the ship-chandler who supplied her.

In Admiralty. Suit to recover seamen's wages.

*Leo & Jordan*, for libelants.

*W. H. Effinger*, for respondent.

Before HANFORD, District Judge.

HANFORD, District Judge. I have very carefully read the testimony and given consideration to the pleadings in this case, and am now ready to announce my conclusions.

I think the court is justified, and in fact required, to take jurisdiction of this case, although it is a suit for seamen's wages against a foreign vessel, for three reasons: (1) There is no British consul at the port of Tacoma, and the consul at Port Townsend, where the nearest consul resides, after being called upon to investigate and adjust the matters of difference between the master and crew, made no response to the request of the seamen except to make a demand for payment of or security for his fees and expenses, with which demand they were not able to comply; but (2) even if the consul had been willing, or had in fact assumed jurisdiction, the case is not one which could be taken out of the jurisdiction of the United States court, properly. Two of the libelants are American citizens, and entitled to sue in the courts of their own country for the determination and adjudication of their rights. (3) All of the libelants but three have been brought to this country without having been lawfully bound by any contract of shipment. They are perfectly free to leave the vessel at this port, and demand payment of their wages. They have left the vessel, have demanded payment of their wages, and their demand has been refused. They have been turned out of the vessel destitute, and wages which they have earned by their services have been withheld from them. They are not bound to return to the home of this vessel to sue her, but are entitled in an admiralty court here to have their rights enforced.

I find a wide divergence in the testimony in behalf of the libelants and in behalf of the ship, and have been obliged to weigh the testimony to determine which side was giving the truth, and in so doing have given importance to the facts and circumstances which are clearly established, and about which there can be no doubt. One important circumstance is that this captain left the port of Barry, on this present voyage, having on board one seaman who had not signed the shipping articles for the voyage in the presence of a shipping commissioner or agent, as required by the laws of the country to which this vessel belongs. He gives as an excuse that it was because of the negligence and fault of the commissioner or shipping agent at the port of Barry in not attending to the matter of having the men all sign the shipping articles. This statement is of itself unreasonable and improbable. It is met by the counter-statement that the man being a foreigner, and unable to understand the English language, the shipping agent refused to sign him without the assistance of an interpreter to explain the contract before he signed the articles,—a statement which is probable, and a full justification of the shipping commissioner's failure. The vessel proceeded to Rio de

Janeiro, and there the larger portion of the crew deserted the ship. The captain brought his vessel away from that port with a crew secured there, none of whom signed the shipping articles in the presence of the British consul. It is shown in testimony, and admitted by the captain, that the British consul refused to sanction the engagement of these men as seamen on this vessel. The captain has entered in his log, and has testified on this trial, and presumably has reported to his owners and the British board of trade, that the reason for the refusal of the British consul to engage these men was that they were not in possession of discharges from the vessels in which they last previously served, and that it was simply an arbitrary and unreasonable piece of stubbornness on the part of the British consul to refuse to sanction the employment of these men. The shipping articles themselves contain an indorsement written by the British consul, signed officially and under his official seal, in which he makes a statement directly at variance with that of the captain. He states that the reason he refused to sanction the employment of these men was that it did not appear to him that the men were not deserters from other vessels then in port, and requiring their services to enable them to proceed on their voyages. I feel bound to accept the certificate of the British consul as being the truth of the matter. It was in accordance with his duty and with law, and altogether more probable than that he unreasonably refused to act in a way that would enable this vessel to secure the services of necessary seamen, and proceed on her voyage.

It appears that the captain employed a shipping or boarding-house master at Rio to secure a crew for him; and a part of these libelants were taken on board with their consent, and have served as mariners on this vessel. The signing of the articles on board the ship, out of the presence of the British consul was a useless formality. The men were not given their option to sign or not. They were not asked to consent to the terms and conditions contained in the articles, but were taken down into the cabin of the vessel, and the shipping master, a resident of Rio, wrote their names and the other facts about them entered in the shipping articles; and they were told the amount of advance that the captain allowed, all of which was paid to the shipping or boarding master, and then they were ordered on deck and set to work. This manner of signing shipping articles is not in any sense the making of or entering into a binding contract. These men, by the writing of their names on the shipping articles by the boarding-house master, were not bound to perform the voyage, or remain in the service of the ship any particular time. They are not bound by the rate of wages. They have the right to leave the vessel in this port, and in leaving her do not become deserters, or forfeit their wages; and they are entitled to recover on a *quantum meruit* the reasonable value of their services from Rio de Janeiro to this port.

It is clearly established, however, that three of these men taken on board the vessel at Rio were not taken on board for the purpose of making the voyage in the ship with their consent, but they were "shanghaied." Two of them were inveigled by the boarding-house master,

whom the captain of the ship employed to get a crew for him on the pretense of working as stevedores, while the vessel was in port at Rio, and under an agreement that they would be paid at the rate of 10 shillings per day for their time. When the vessel was through with their services as stevedores, they requested permission to go on shore, and were refused by the captain. They were unable to go on shore, because the vessel was not at any wharf, but was at a distance from the shore, and there was no boat which they could obtain for the purpose. They were told that they would have to remain in the ship and go in the ship, to which they never consented. These are facts sworn to by them, and not denied or attempted to be denied by the captain in his testimony; and the shipping articles show that somebody else signed for them,—and that was done, as the testimony shows, after they were in fact on board the ship, and detained there against their will. The other man was taken on board the ship by this boarding-house master simply to assist him in getting out to the vessel, to carry the other men on board, and was left on board the vessel when the boarding-house master went ashore. He reported to the captain before the vessel got out of the harbor, and while she was in tow of the steam-tug, and informed the master that he was not in condition to go to sea, that he had no outfit for the voyage, and had even left his coat on shore. The master could easily have sent him ashore on the tug without inconvenience or danger; but he detained him, refused to let him go on shore, and the next day, after the vessel got out of the harbor, made a formality of shipping him, claiming that he was entitled to ship him as a "stowaway," at the wages of one shilling per month. Now, the plain truth about the matter is, this man was kidnapped, brought here against his will, and is entitled to claim as wages from the ship, certainly, reasonable compensation. I do not think it is for the master to fix his wages at one shilling per month, or any other sum. This man has a right to fix his own wages, and the court will allow it anywhere within reasonable limits.

Three of the libelants were lawfully employed, and signed shipping articles at Cardiff, before the vessel started on her voyage. They claim the right to leave the vessel because of a breach of their contract of shipment, in the manner in which they were treated on board, and because of the deprivation of necessaries during the voyage,—of proper food, and lime juice or other antiscorbutics. The testimony, I think, shows that the provisions of the ship were scant. I do not think there was starvation, but the provisions were of the coarsest and cheapest quality, were scant in amount, and poorly cooked. The principal article of diet which the crew had was called "skouse," a combination of sea biscuits with a little meat mixed in, and cooked with the skimmings from boiled salt meat. The salted meats were boiled in sea water, and the only seasoning which the skouse had was the skimmings from the boiled meat, boiled in sea water. Some of the crew stated that they liked it, and got along all right; but those who were not able to endure that sort of diet had to put up with it, whether they liked it or not, and they suf-

fered. There were no dried apples or other fruit furnished them as a relish, and during all the voyage from Rio to Tacoma, they were wholly deprived of lime juice. The excuse is that it requires sugar to mix with the lime juice, and the ship had an insufficient supply of sugar to justify the use of it in furnishing lime juice. It is claimed that there was a mistake on the part of the ship-chandler in giving something else in the place of sugar; that it was because of his negligence in the matter. That does not relieve the vessel from responsibility. It makes no difference to the libelants whether the negligence was that of the master or of some other agent of the owner. The men suffered in either case. It was a breach of the contract; and I hold that it justifies the libelants Newton, Golding, Swenzer, and Orr in leaving the vessel at Tacoma.

In weighing the testimony, I have made due allowance for the exaggerations in the testimony of the libelants, which are apparent, and have not assumed that all of the hardships and cruelties that they have referred to in their testimony are given with strict accuracy; but there is a decided preponderance of evidence that, in addition to deprivations, there was considerable abuse of the crew by harsh and abusive language, and by assaults at different times on different persons. I have felt justified in entirely disregarding the testimony of the captain on all points in which he is contradicted, by reason of the manifest untruthfulness of his testimony in regard to the failure of the shipping agent at Barry and the British consul at Rio to attend to the shipping of these men, and the signing of the articles. He has willfully testified falsely in this material matter, and I do not regard him as a reliable witness.

The libelants Swenzer, Newton, Orr, and Golding will be allowed to recover the balance of wages due them as alleged in the libel. I think they are at least entitled to all that they claim, and will not allow them anything more. The court has to fix the wages to be allowed to the other libelants, because there is no binding contract here fixing their wages. I will allow Johnson the amount he has sued for. Thirty dollars per month is reasonable, and he is entitled to it. There is considerable discrepancy in the evidence as to the rate of wages obtaining at the port of Rio, where these men were secured. On the part of the ship, it is claimed that the highest wages were $20 per month. On the part of the libelants, it is claimed that it was $30. These men would be entitled to something in addition to mere wages, as compensation for the deprivation of proper food and antiscorbutics; and, taking that into account, I will allow them $30 a month, although I would not find as a fact that that was the rate of wages at Rio, or the amount I should have allowed them if they had been well cared for on the ship. The libelants Johnson, Connell, Searl, Wilson, Nordstrum, Paulson, Latchford, and Powle will therefore each be allowed wages at the rate of $30 per month. The other two, James and Green, will be allowed to amend the libel, and claim wages for the time they served in the ship, doing stevedore work, and served as mariners

on the voyage, at the rate of 10 shillings per day; and the court will allow it.

In the argument the court listened to an appeal in behalf of this ship to consider the interests of the port of Tacoma,—the commercial interests of this port. The court regards as its imperative duty, above any mercenary interest that any parties to this suit or people outside of this litigation may have in the matter, the doing of justice, the upholding of the maritime law of this country and of the world; but, in addition to that, the commerce of the country cannot suffer by protecting the rights of mariners. Reliable and efficient seamen are just as necessary to commerce as ships are; and it is only necessary to sanction or permit the practice of kidnapping seamen to be carried on, to reduce the shipping interests in a very short time to a dependency upon slave labor. I can imagine nothing that would be a more severe blow to the commercial world than to oppress and enslave the class of men who are willing to endure the hardships and encounter the dangers of a seafaring life; and I believe that the interests of the port of Tacoma, as well as justice itself, call upon this court, whenever a ship's master stands convicted before it of the offense of kidnapping seamen, to deal with enough severity to at least check this great evil. In giving what I have to these men, I have given them simple justice, and think I have dealt mildly with the captain of this ship.