### THE WALTER D. WALLET.

### TRACEY v. THE WALTER D. WALLET.

(District Court, S. D. Alabama. March 20, 1895.)

No. 720.

ADMIRALTY JURISDICTION—COMITY—LIBEL BY FOREIGN SEAMAN AGAINST FOREIGN VESSEL.

Where a British seaman, injured on a British ship on the high seas, was placed in a hospital by the master on arrival here, to be cared for at the expense of the ship, and the British consul signified his intention of sending the seaman home by the ship, which at the time was loading for a return voyage direct to England, *held*, that a court of this country would decline, on the ground of comity, to assume jurisdiction of a libel for damages, in opposition to the wishes of the consul, especially as the voyage was not completed, or the seaman discharged, and as the rights of the parties must be determined by the English law.

This was a libel by John Tracey, a seaman, against the British ship Walter D. Wallet to recover for personal injuries.

Smith & Gaynor, for libelant.

Pillans, Torrey & Hanaw, for claimant.

TOULMIN, District Judge. The libel sets forth:

"That while the vessel was on the high seas, six days out from Liverpool, England, bound for Mobile, libellant, a seaman on board, was ordered aloft on the foreyard to do some work there, which required him to stand on the foot ropes of said yard, and the becket ropes, regular appurtenances provided to hold on to to secure his safety while doing his work, by the negligence of the owner or master, whose duty it was to use due care to provide and keep there good, safe, and strong becket ropes, were allowed to get and remain in a rotten, unsound, and unsafe condition, so that they were insufficient to answer the purposes they were intended for, and by reason thereof gave way while libellant was using them in performance of his duties, and thereby he fell to the deck, broke his thigh, dislocated his elbow, and cut his head so that he will probably be disabled for life from the pursuit of his present calling; therefore, libellant sues for damages in the sum of $10,000."

The courts of the United States in admiralty may, in their discretion, take jurisdiction in cases of complaints made by foreign seamen. But the supreme court, in the case of The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860, say that:

"Circumstances often exist which render it inexpedient for the court to take jurisdiction of controversies between foreigners in cases not arising in the country of the forum; as where they are governed by the laws of the country to which the parties belong, and there is no difficulty in a resort to its courts. * * * The cases of foreign seamen suing for wages, or because of ill treatment, are often in this category; and the consent of their consul is frequently required before the court will proceed to entertain jurisdiction, not on the ground that it has not jurisdiction, but that, from motives of convenience or international comity, it will use its discretion whether to exercise jurisdiction or not; and where the voyage is ended, or the seamen have

been dismissed, or treated with great cruelty, it will entertain jurisdiction even against the protest of the consul."

There are no treaty stipulations existing between the United States and the British government with regard to adjusting controversies arising between the master and crew, or other matters occurring on a British ship. In the absence of such treaty stipulations, on general principles of comity, the admiralty courts of this country will not interfere in such cases unless there is special reason for doing so, and will require the foreign consul to be notified; and, though not absolutely bound by, will always pay due respect to, his wishes as to taking jurisdiction. The Belgenland, supra.

The libellant in this case is a British seaman on a British vessel. When six days out from Liverpool, England, bound for this port, he was seriously and permanently injured by a fall from the foreyard of the vessel, where he was at work. He sues to recover damages for the injuries sustained by him, and also for expenses of his cure and subsistence; and he prays to be discharged, and for wages. This was the first port made by the vessel after the injury occurred. On arriving here, the libellant was placed in the United States marine hospital, where, under arrangements made by the master of the vessel, or by the consul, he has had medical care and attention, and has been subsisted, at the expense of the vessel. The voyage for which the libellant shipped has not ended. The libellant has not been dismissed, and he has not been treated with cruelty, so far as the court is advised. But it appears that the master has done what humanity and his duty required him to do towards alleviating the suffering and supplying the wants of the unfortunate sailor. The vessel is now loading, and is destined for Great Britain. The British consul does not petition the court to take jurisdiction of the case; but, on the contrary, requests the court to decline to entertain jurisdiction of it, representing to the court that the ship is now loading, and is destined for Great Britain, whither she will soon sail; and that it is his purpose to send the libellant home on her, that he may have full opportunity at home to enforce any and all rights that he has in the premises.

The rights of the parties are governed by the laws of Great Britain, to which country they belong, and there is no difficulty in a resort to its courts. As I have said, the voyage has not ended, the libellant has not been dismissed, or treated with cruelty; and the consul protests against the court entertaining jurisdiction in the case. It is the duty of the ship to pay the expenses of the seaman's cure (as far as cure is possible), care, and subsistence, and it is doing so. Under the British law it is its duty to take him back home if he is able to go, and the consul informs the court that his purpose is to send him back. If he is not able to be taken back, the British law provides for such contingency, specifies the rights of the seaman, and prescribes the duties of the master and the consul in such case, and the presumption is that those duties will be faithfully performed. The libellant is not entitled to be paid his wages now unless his relation to the ship has terminated, and it appears that it has not.

Whether the libel can be maintained for the personal injury depends upon the British law, and I think that can better be determined by the courts of Great Britain, to which country the parties belong. It seems to me that justice between the parties would be better subserved by this court declining jurisdiction and remitting the parties to their domestic and natural forum, the courts of their own country. But, whether this be so or not, there do not appear to me any special reasons for this court to entertain jurisdiction, but rather that, from motives of international comity and good policy, this court should decline to exercise jurisdiction in the case.

"The jurisdiction will, in the discretion of the court, be declined in suits between foreigners, where it appears that justice will be as well done by remitting the parties to their home forum." The City of Carlisle, 39 Fed. 815.

The libel is therefore dismissed.