## THE IQUITOS.

## GILDEMEISTER & CO. v. PERUVIAN S. S. & FLOATING DOCK CO. OF CALLAO.

(District Court, W. D. Washington, N. D. November 26, 1921.)

### No. 6209.

1. Admiralty ⬥5—Jurisdiction of suit between aliens declined.

A United States court of admiralty in the exercise of its discretion, will refuse to take jurisdiction of a suit by a shipper for damage to a cargo shipped from Peru to British Columbia, where all parties are alien and the ship is of foreign registry, the evidence is not within the jurisdiction of the court, and where the parties contracted in the bill of lading that their rights should be governed by English law.

2. Admiralty ⬥44—Filing of stipulation for value does not preclude claimant from objecting to jurisdiction.

The filing of a stipulation for release of a libeled vessel does not preclude claimant from suggesting want of jurisdiction, nor take from the court its discretion to decline jurisdiction.

In Admiralty. Suit by Gildemeister & Co., against the Steamship Iquitos; the Peruvian Steamship & Floating Dock Company of Callao (otherwise known as the Campania Peruana de Vapores y Dique del Callao), claimant. On objections to jurisdiction. Dismissed.

Bogle, Merritt & Bogle, of Seattle, Wash., for libelant.
Huffer & Hayden, of Seattle, Wash., for claimant.

NETERER, District Judge. Libelant seeks recovery from respondent ship because of damage occasioned to cargo of sugar shipped from port in Peru to Port Vancouver, B. C., because of unseaworthiness of vessel, improper stowage, lack of dunnage, and proper ventilation. The ship sailed in June, 1921, and discharged cargo July 15, following. The ship was attached in the port of Seattle and released under usual stipulation. It appears that all parties to the transaction and the ship are alien, the parties citizens of Peru, and the ship of Peruvian registration.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] Objection is filed to the court entertaining jurisdiction and proceeding with the cause, by the owners, and supported by the suggestion of the Peruvian consul stationed at the port of New York; the consul stationed at the port of Seattle being absent on leave. In support of the objections and suggestion it is alleged that the government of Peru owns a majority of the stock of the claimant corporation, owner of the vessel. The bills of lading for the shipment provide that:

"This bill of lading shall be governed by English law to the exclusion of proceedings in the courts of any other country, except average, which shall be payable according to York-Antwerp rules and adjusted in Liverpool. * * * All claims arising under this bill to be adjusted in Liverpool. * * * "

It is asserted by the libelant that most of the testimony necessary to support the libel "will have to be obtained from documents and witnesses kept and residing in Vancouver, B. C." The affidavit of Manion, who "acted as agent for said steamer" while loading at the port of Seattle, states that he is advised by the consul general of Peru at New York:

"That the said steamer was the property of the Peruvian government, through a corporation the majority of the stock of which is owned by the Peruvian government; that he has examined Lloyd's Register of Shipping for the years 1921–1922, and * * * the list of steamers, owners, and managers, and finds under Peruvian Government of Callao the steamer Iquitos, built 1894, gross tonnage, 3,264; * * * under the column of owners appears Peruvian Government, following which, under the column entitled 'Port of Registry,' appears 'Callao, Peru.'"

It also appears from the affidavit of the claimant that testimony will necessarily be taken at the port of shipment in Peru, and that by the stipulations in the bill of lading the parties have agreed to a jurisdiction for the adjustment of claims.

It is conceded, I think, that the matter lies within the discretion of the court (Benedict, § 195, and cases cited), unless it appears through proper sources that the vessel is a vessel belonging to the government of Peru, and upon such suggestion the court would decline to be moved. Such representation, however, should be supported by a proper suggestion to the court by the Attorney General or some law officer acting under his direction. In re Muir, 254 U. S. 522, 41 Sup. Ct. 185, 65 L. Ed. 383. To the same effect is The Pesaro, 255 U. S. 216, 41 Sup. Ct. 308, 65 L. Ed. 592. This court, in matters involving issues wholly between foreigners and foreign ships, has uniformly declined to be moved upon the suggestion of the foreign consul, unless seamen have been dismissed without pay, etc. The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860, 29 L. Ed. 152.

In the instant case there is existing a contract between the parties stipulating the tribunal and jurisdiction in which the controversy shall be determined. The Belgenland, supra. It likewise appears that convenience of evidence would not be served, as none of the testimony is within the jurisdiction of this court, or within the United States, but is wholly within the countries of Peru and British Columbia. Nor does it appear that it is necessary to prevent a failure of justice. Goldman v. Furness, Withy & Co. (D. C.) 101 Fed. 467.

Libelant asserts that it has expended moneys to initiate this proceeding, and that if the court declines jurisdiction such sums will be lost. These sums were not expended upon the invitation of the court, nor could it have been expended following any precedent of this court, or of this country, with relation to entertaining jurisdiction of foreign litigants in connection with a foreign ship. I think, in view of the record, this court should not exercise its discretion in favor of "scrapping" the stipulation agreed to by the parties at the time the relation between them was established.

[2] The fact that a stipulation for release of the vessel was filed will not preclude the claimant from making the suggestion to the court, nor take from the court the discretion there lodged. Manchester v. Hotchkiss, Fed. Cas. No. 9,004; The Fidelity, Fed. Cas. No. 4,758; The Hungaria (D. C.) 41 Fed. 109.

An order may be presented.