**THE HARFRY et al.**

**THE LUSO et al.**

**No. 87 A.**

District Court, D. New Jersey.

July 26, 1941.

William T. Ard, of Jersey City, N. J., and Haight, Griffin, Deming and Gardner, of New York City, for libelants.

Krusen, Evans and Shaw, of Philadelphia, Pa., for respondent.

FORMAN, District Judge.

Libelants sue to recover damages to the Harfry of British registry, and her cargo, caused by a collision with the Luso of Portuguese registry on December 10, 1939, outside the harbor of Dunkirk, France. Libelants and respondent are British and Portuguese corporations respectively. Suit is in rem against the Luso, and in personam against her owner. Respondent interposes a motion for the court to decline jurisdiction under its discretionary powers.

The leading authority on the problem is The Belgenland, 114 U.S. 355, 5 S. Ct. 860, 29 L.Ed. 152, involving a collision which took place on the high seas between the Norwegian barque Luna and the Belgian steamship Belgenland, by which the former was run down and sunk. Part of the crew of the Luna, including the master, was rescued by the Belgenland and brought to Philadelphia. The master immediately libelled the steamship on behalf of the owners of the Luna and her cargo, and her surviving crew, in a cause civil and maritime. The respondent objected to the jurisdiction of the court on the grounds that the collision occurred between foreign vessels beyond the jurisdiction of the United States, and that no American citizen had an interest in the matter. The court observed

that although jurisdiction could be declined at the court's discretion, the case came within the domain of the general law of nations, or communis juris and was prima facie a proper subject of inquiry in any Court of Admiralty which first obtained jurisdiction. It stated:

"But, although the courts will use a discretion about assuming jurisdiction of controversies [in such cases] special grounds should appear to induce the court to deny its aid to a foreign suitor when it has jurisdiction of the ship or party charged. The existence of jurisdiction in all such cases is beyond dispute; the only question will be, whether it is expedient to exercise it." 114 U.S. 355, 365, 5 S.Ct. 860, 865, 29 L.Ed. 152.

"This seems to us to be a very sound view of the subject; and, acting on this principle, we certainly see nothing in the course taken by the district court, in assuming jurisdiction of the present case, which calls for animadversion. Indeed, where the parties are not only foreigners, but belong to different nations, and the injury or salvage service takes place on the high seas, there seems to be no good reason why the party injured, or doing the service should ever be denied justice in our courts. Neither party has any peculiar claim to be judged by the municipal law of his own country, since the case is preeminently one communis juris, and can generally be more impartially and satisfactorily adjudicated by the court of a third nation having jurisdiction of the res or parties, than it could be by the courts of either of the nations to which the litigants belong. As Judge Deady very justly said, in a case before him in the district of Oregon: 'The parties cannot be remitted to a home forum, for, being subjects of different governments, there is no such tribunal. The forum which is common to them both by the jus gentium is any court of admiralty within the reach of whose process they may both be found.' Bernhard v. Creene [Fed. Cas.No.1349], 3 Sawyer, 230, 235." 114 U.S. 355, 368, 369, 5 S.Ct. 860, 866, 29 L.Ed. 152.

Respondent agrees that it is within this court's discretionary powers to hear this controversy. It asserts, however, that its vessels do not operate on regular lines to this country, that it has no offices or agents here, that its key witnesses are elsewhere, and that no parties are American citizens, and that these are compelling reasons for the court to decline jurisdiction. In reply, libelants state that their witnesses are likewise elsewhere, that respondent declined to enter an appearance in London, that under the present conditions in Europe it would be impractical to transport witnesses from England to Portugal, and impossible to arrange to produce their pilot, who now resides in France, for the purpose of testifying in their behalf, and that respondent will not be seriously handicapped by virtue of the absence of its witnesses because it has already taken their depositions in this country.

■ Of course, a variety of circumstances may be considered in the exercise of our discretion. The only material objection of respondent is the unavailableness of its witnesses. See The Belgenland, supra. Access to witnesses is only one of the materialities, and certainly not dispositive. Canada Malting Co. v. Paterson Steamships, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837; The Beaverbrae, D.C., 60 F.2d 363; Wittig v. Canada S.S. Lines, D.C., 59 F.2d 428; The Lady Drake, D.C., 1 F.Supp. 317; The Iquitos, D.C., 286 F. 383. Its relevancy may be outweighed by numerous other factors. A number of cases have been cited by both parties in which the discretion of the courts has been exercised for or against the retention of jurisdiction. However, more cogent or applicable language has been used in none than that cited above from The Belgenland.

■ Inaccess to witnesses herein is not only mutual but evanesces into insignificance due to the situation abroad. Libelants would suffer serious inconvenience if left to a remedy in the courts of Portugal. At the same time we do not ignore the inconvenience of respondent if brought to suit in a jurisdiction other than Portugal. Under such circumstances trial in the court of a country neutral to both parties seems especially appropriate and moves our discretion to retain jurisdiction and deny the motion of the respondent.