MOBIL TANKERS COMPANY, S. A., a corporation of the Republic of Panama, Avenida Tivoli No. 14, Panama, R. P. bare boat chartered owner in possession and operator of the Panamanian FLAG VESSEL MOBIL ASTRAL, Libellant,

v.

MENE GRANDE OIL COMPANY, a Delaware corporation, Respondent.

No. 1845.

United States District Court
D. Delaware.

Nov. 12, 1964.

Supplemental Opinion Dec. 16, 1964.

David Snellenburg, II, of Killoran & Van Brunt, Wilmington, Del., and John W. Knox, New York City, for libellant. John W. Knox, Peter H. Ghee, New York City, and David Snellenburg, II, Wilmington, Del., of counsel.

David B. Coxe, Jr., Coxe, Booker, Walls & Cobin, Wilmington, Del., and Burlingham, Underwood, Barron, Wright & White, Frederick L. Scofield, New York City, for respondent. Eugene Underwood, Frederick L. Scofield, and Joseph C. Smith, New York City, of counsel.

LAYTON, District Judge.

The question here presented arises from an exception by respondent to libellant's libel upon the ground that the familiar Admiralty principle of *forum non conveniens* requires that jurisdiction in this District should be declined

and libellant relegated to the courts of Venezuela for relief.

## FINDINGS OF FACT [1]

(1) Libellant (Mobil Tankers) is a Panamanian corporation wholly owned and directed by Socony Mobil Oil Company, an American corporation.

(2) Libellant owns and operates a fleet of oil tankers under the Panamanian flag whose operations are worldwide including calls at United States ports.

(3) Among the tankers owned by libellant is the "Mobil Astral."

(4) Respondent (Mene Grande Oil Company) is a Delaware corporation whose voting stock is wholly owned by a subsidiary of Gulf Oil Corporation. The principal place of business of Gulf is in Pittsburgh, Pa.

(5) Respondent has several officers and directors in Pittsburgh whose principal duties are a determination of the amount of budgetry requirements and capital needs for its Venezuelan operations. The number of its officers and directors who are also officers or directors of Gulf Oil suggests that its affairs are substantially directed and controlled by Gulf Oil Corporation.

(6) Respondent, though nominally an American corporation by virtue of having been incorporated in Delaware, has a bona fide domicile in Venezuela. Its activities are principally the drilling of oil and gas wells in Venezuela and transportation of crude oils to Venezuelan deep sea ports by pipeline and the delivery of such oil by pumping same aboard customer's ships. These activities take place exclusively in Venezuela. It has a gross investment of a billion dollars in Venezuela and employs over 4300 persons in that country with an annual payroll of over 35 million dollars.

(7) Respondent has no officers, employees or business in Delaware. In this State and District it maintains only a resident agent for the service of process.

(8) At all material times, there existed a certain Terminalling Agreement between respondent and Mobil Oil Company de Venezuela (herein called Mobil Venezuela), also a Delaware corporation, and a wholly-owned subsidiary of Socony Mobil. This Agreement provided for the storage by respondent at its terminal in Puerto La Cruz, Venezuela, of crude oil owned by Mobil Venezuela and for respondent loading such crude oil on board tankers designated to receive same when sold by Mobil Venezuela. The Agreement provided that Mobil Venezuela, or its consignee, in advance of each such crude oil delivery, should notify Gulf Oil at Pittsburgh regarding name and capacity of each vessel to be loaded, date of expected arrival, and type and quantity of crude oil to be delivered. The Terminalling Agreement further provided that any arbitration thereunder should be conducted in New York under the Rules of the American Arbitration Association, and that any award rendered should be entered as a judgment in the Supreme Court of New York County; also, that all payments to be made to respondent should be made in United States dollars to its account at the First National City Bank of New York, in San Juan, Puerto Rico (United States). However, the Agreement does not state what law should govern.

(9) On March 25, 1960, the libellant's Mobil Astral was at respondent's terminal in Puerto La Cruz taking aboard petroleum during the course of which operation there was an explosion and fire on the Mobil Astral causing loss of life and substantial damage to the ship.

(10) Libellant has sued respondent in the United States District Court in Delaware for damages as a result of this occurrence by way of service upon respondent's resident agent in this State.

(11) This Court has jurisdiction of this suit. The Venezuelan courts also have jurisdiction.

---

[1]. A letter attached to libellant's brief from a Dr. Evans, libellant's Venezuelan counsel, to John Knox, Esquire, libellant's American counsel, has not been considered in arriving at these findings of fact.

(12) Libellants have nowhere denied respondent's assertion that the statute of limitations in Venezuela governing this case is ten years. In any event, respondent has offered not to raise any defense under that statute in any subsequent suit instituted by libellant on this cause of action in Venezuela for one full year after this Court's final determination that it will decline jurisdiction on the ground of *forum non conveniens*.

(13) The Venezuelan law (the Civil Code), and not the International Law of the Sea, will be the law of the case if tried in this District.

(14) In order to defend this action in Delaware, respondent would have to bring to this State and District about 18 employee witnesses including an expert on Venezuelan law. The overall cost of transporting to, and maintaining these witnesses in, Delaware will be about $15,-000. The absence of so many of its personnel from the Puerto La Cruz terminal would handicap it to some extent[2] in its loading operations at that facility for a substantial period of time (about two weeks), and should an accident occur there while loading during such period, respondent might be open to a charge of negligence for operating with insufficient, or lack of, proper personnel.

(15) The costs of the entire trial including legal fees if held in the United States are not deductible taxwise by Mene Grande under Venezuelan law but would be if the case were tried in Venezuela.

(16) If the trial were held in the United States, libellant would employ approximately five or six United States witnesses, three or four of whom would be experts, including an expert in Venezuelan law, and some ten crew members of the Mobil Astral who are scattered on ships all over the world. Four of these are officers who are German and the balance, Indians. Since these ship witnesses would have to be brought from various parts of the world to testify, they could be taken to Venezuela about as cheaply as the United States for this purpose.

(17) If the trial were held in Venezuela, respondent would be put to little or no extra expense or inconvenience, because practically all its witnesses reside in Venezuela and, moreover, it could maintain the operation of its facilities at the Puerto La Cruz terminal much more easily. All the records pertaining to the trial would be there and it could obtain tax advantages not available if the case were tried in the United States.

(18) If the trial were held in Venezuela, libellant would be put to slightly greater expense and inconvenience. It might choose to take perhaps three or four American witnesses, mostly experts. It is the belief of this Court that the testimony of two American witnesses as to the repairs to the Mobil Astral could be stipulated into the record whether the trial is in Venezuela or Delaware.

(19) Expert Testimony, as we know it in this country, is furnished the Court in Venezuela through a Board or Panel of three experts. Each party has complete freedom in naming one member of the Board. The third is named by the judge if the two parties cannot agree. Therefore, both libellant and respondent could place at least one American expert familiar with tanker fire and/or explosion on the Board. Members of the Board express their opinions to the Court through written reports. The Board prepares a joint report for submission to the Court. A dissenting member may submit a minority report. The Court is not bound by the contents of the report or reports. The Board may hear the testimony of any number of experts but the testimony of such experts is limited to fact, not opinion, testimony. Libellant's fear that the language barrier

2. This would be true only if an above-average number of ships berthed at Puerto La Cruz for taking on oil during the period of the trial. It is not unlikely that at some time or times during the estimated two week period of a trial that an above-average number of ships might be at respondent's docks at Puerto La Cruz for taking on oil.

may prevent an American from being an effective member of the Board is not persuasive.

(20) Libellant's contention that, if the case were tried in Venezuela, its ship witnesses would first have to be taken to New York and interviewed, and then flown to Venezuela for trial, is not acceptable. However, it is possible that it would be more convenient for libellant, after the trial, to fly the ship witnesses back to New York for reassignment to ships because libellant does not use Venezuelan ports as places to reassign crews.

(21) Roughly, the same number of witnesses would require interpreters no matter where the case is tried.

(22) Libellant would not be prejudiced by having to try this case under Venezuelan court practice. This practice does differ from the practice of the federal courts in this country in numerous respects. Discovery is more limited. Opinion, or expert testimony, is treated differently, although this court does not view the Venezuelan practice in that respect as being any less desirable than the practice in this country.[3] A trial would not proceed as easily or rapidly but, libellant's case would be subject to the law of Venezuela in any event and the procedural difference between the court practice of Venezuela and the United States are not so drastically different as to affect libellant's chance of recovery.

(23) One of libellant's scarcely concealed, and very strong reasons, for seeking a trial on neutral ground in the United States is the fact that it fears that Mene Grande, being domiciled in Venezuela and having a large payroll in that country, may enjoy an advantage in the courts of that country. Inasmuch as the case in Venezuela would be tried by a single judge, this Court does not view libellant's fears with great concern because the trial being without jury in Venezuela, it must be assumed that judges of civilized countries such as Venezuela would be as free from prejudice as in this country.

(24) It would be helpful, but not essential, for the Court during the course of the trial to be able to view the exact site of the accident including a vessel of the Mobil Astral's class docked there in order to see demonstrated the entire operation of loading oil on to the ship and to determine the accuracy or lack of accuracy of the testimony of certain of libellant's witnesses as to what they could see during the course of certain aspects of the loading operation.

(25) To date, American lawyers representing these parties have conducted all preliminary phases of this litigation, but if the case is tried in Venezuela, presumably it will be tried by Venezuelan counsel.

Whether or not the doctrine of *forum non conveniens* is applicable here must necessarily depend to some extent on a correct evaluation of the real citizenship of the parties and their relationship not only vis-a-vis but also to this Court. Even a superficial study of the preceding Findings of Fact demonstrates that these present vexing questions. Nor are the cases dealing with *forum non conveniens* any less vexing than the facts just recited. There is no uniformity in the opinions and no decision squarely in point.

The Belgenland, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152 (1885), and a group of associated cases such as Motor Distributors v. Olaf Pedersen's Rederi A/S, 239 F.2d 463 (5 Cir. 1957), and The Harfry, 39 F.Supp. 893 (D.C.N.J.1941), seem to hold that where both parties are foreign, the cause of action of foreign origin and governed by the Communis Juris (the law of nations), our courts should take jurisdiction unless the respondent demonstrates it would suffer an injustice if the case were tried in the Courts of the United States. But one of the parties

---

3. The Venezuelan practice is somewhat like the English practice where a panel of impartial experts is available as an aid to the court. It is this Court's experience that under the system in the United States it is rare that a party cannot find an expert willing to support his version of the case.

here, Mene Grande, is at least nominally not foreign and the cause of action is subject to the civil code of Venezuela, not the Communis Juris.

There is another group of cases such as The Saudades, 67 F.Supp. 820 (D.C. E.D.Pa.1946); Wheeler v. Societe Nationale des Chemins de Fer Francais, 108 F.Supp. 652 (D.C.S.D.N.Y.1952); and States Marine Lines, Inc. v. The M/V Kokei Maru, 180 F.Supp. 255 (D.C.N.D. Cal.1959); where a bona fide American plaintiff sued a foreign corporation in a United States District Court upon a cause of action arising in a foreign country and where foreign law would apply. In these cases the courts, obviously in aid of the United States litigant,[4] accepted jurisdiction even though the trial would be governed by foreign law and the foreign respondent inconvenienced. But again, unless we close our eyes to the fact that Mobil Tankers, although controlled by United States interests,[5] is in fact a foreign corporation, whose foreign flag ships officered and manned by all foreign crews, are in world trade only incidentally touching at United States ports, and that Mene Grande is only nominally a United States citizen,[6] can any analogy be found between the cited cases and this situation.

4. In The Kokei Maru the Court, at page 258, significantly stated, "However, in this case the American nationality of libelant is an additional factor which we are entitled to consider of sufficient importance to justify the retention of jurisdiction * * *." See also Swift & Co. Packers v. Compania Colombiana Del Caribe, 339 U.S. 684, 697, 70 S.Ct. 861, 94 L.Ed. 1206 (1925).

5. Cf. Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 336, 45 S.Ct. 250, 69 L.Ed. 634 (1925).

6. It is significant that the non-citizen party is the one who seeks to have the case tried in the United States. Mene Grande is not invoking its right as a citizen to sue in this country. In fact, it is resisting the jurisdiction of this Court. In Linea De Vapores Garcia,

There is also the rule stated in 1 Benedict, The Law of American Admiralty, Sec. 84 (6th Ed. 1940):

"[W]hen a cause of action has arisen abroad and witnesses are abroad * * * the court will ordinarily not accept jurisdiction unless it is necessary to prevent a failure of justice."

The rule is applied in several District Court decisions. See Royal Mail Steam Packet Co. v. Companhia de Navegacao Lloyd Brasileiro, 27 F.2d 1002 (E.D.N.Y. 1928); The Lynghaug, 42 F.Supp. 713 (E.D.Pa.1941).

■ Due to the unusual circumstances relative to the citizenship of the parties and the absence of any authority squarely governing these facts, it is my judgment that the various factors should be weighed in the light of the *forum non conveniens* rule laid down in civil cases to the effect that the plaintiff's choice of forum is rarely disturbed except upon a strong showing of inconvenience on the part of a defendant. Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

Gilbert, although not an admiralty case, is the last expression of our Supreme Court[7] on the subject and, even though the parties are not essentially United States citizens, offers at least a loose analogy with the case at bar.[8]

S. A. v. The President Polk, 89 F.Supp. 952, 1950 A.M.C. 1115 (E.D.N.Y.), the Court said, "I am convinced that, at the instance of an American national, an admiralty court has power to refuse jurisdiction on the ground of *forum non conveniens*, if a case were made out."

7. Gilbert and Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) were decided on the same day.

8. Plaintiff, a Virginia resident, brought the action in a United States District Court in New York based upon allegations that defendant corporation, incorporated in Pennsylvania, was guilty of negligence leading to the destruction by fire of plaintiff's warehouse in Virginia.

There the Supreme Court sustained a judgment of a United States District Court in New York declining jurisdiction based upon the principle of *forum non conveniens*. In so doing, it examined the various advantages and obstacles to a fair trial in the New York District Court and decided that " * * * *unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.*" Id., 330 U.S. at 508, 67 S.Ct. at 843. (Emphasis supplied.)

Among the major factors considered, the Court said (1) "The plaintiff himself is not a resident of New York, nor did any event connected with the case take place there, nor does any witness, with the possible exception of experts live there." Id., 330 U.S. at 509, 67 S.Ct. at 843. This language aptly describes the facts of the case at bar, for libellant, even with its United States background, is not a resident of Delaware and the cause of action arose in a foreign country.

(2) The Court went on to say, " * * * there is no specification of any local influence * * * that would make a fair trial improbable." Id., 330 U.S. at 510, 67 S.Ct. at 844. In my judgment, also, there would be no unfair advantage to respondent if the case were tried in Venezuela. Only a narrow portion of Columbia separates the country of libellant's chosen residence, Panama, from the country wherein respondent does all its business (Venezuela) and, furthermore, libellant's parent through Mobil Venezuela does substantial business and maintains office space and personnel in Venezuela. Also, libellant's efforts to demonstrate that it would be at a disadvantage in Venezuela are lacking in persuasion in view of the fact that a trial in Venezuela would be conducted by a single judge without a jury.[9]

(3) The Supreme Court noticed that " * * * not only the plaintiff, but every person who participated in the acts charged to be negligent, resides in or near Lynchburg [Va.]." Id., 330 U.S. at 511, 67 S.Ct. at 844. It pointed out that the trial would be a long one, involving the calling of many witnesses and that " * * * Lynchburg, some 400 miles [distant] from New York, is the source of all proofs for either side with possible exception of experts." Ibid. Likewise here, the accident happened, not in Delaware, but in Puerto La Cruz, Venezuela. The source of all proof rests either in libellant's witnesses[10] living on ships all over the world and none a United States citizen, or in respondent's witnesses, practically all residing in Venezuela. The distance from Venezuela to Delaware is 2000 miles. All respondent's witnesses would have to be brought to Delaware while, in my opinion, all libellant's ship witnesses can testify as easily in Venezuela as in Delaware.[11] As a result, also, there is a real question whether or not respondent's loading facilities at Puerto La Cruz might not be handicapped at some time or times during two weeks of trial here if more than an average number of ships made port to be loaded with oil during that period, which is entirely possible. There is also the fact that respondent would be deprived of certain tax advantages if it had to defend this case in Delaware.

(4) And finally, the Supreme Court stressed the fact that "If trial was in a state court, it could apply its own law to events occurring there." And further, "The course of adjudication in New York federal court might be beset with conflict of laws problems all avoided if the case is litigated in Virginia where it arose." Here the analogy is strongly persuasive for if the problem of applying Virginia law in a New York District Court be difficult, the problem of a Delaware District Court, without any training in the Civil Code of Venezuela, and with experts on both sides no doubt in

---

9. See Findings of Fact (23).

10. Libellant's other witnesses, with one possible exception, are either experts

or in this Court's judgment those whose testimony could be stipulated.

11. Except see Findings of Fact (20).

open conflict as to the meaning and interpretations of the language and intent of the Venezuelan statutes governing the case, would be greatly increased.[12]

■ After a full consideration of the factors involved, I cannot overlook certain important, basic facts which, in my view, would operate either unfairly to the advantage of libellant, or to the strong disadvantage of the respondent, if the case were tried here. These are (1) the fact that libellant, the party which most loudly proclaims its United States background, is, in fact, an expatriate which, for its own selfish purposes, has chosen to go to a foreign country to incorporate; whose business is not essentially American but worldwide trade, and which together with its parent and another affiliate have centered a certain phase of the parent's business, namely the recovery and worldwide delivery of oil, in practically neighboring South American countries and some portion of it in Venezuela itself; (2) that the respondent, while nominally a United States resident, has a bona fide Venezuela domicile, a very large business and payroll there and actively resists trial in this country; (3) that the accident happened in Venezuela, where libellant might have anticipated such a happening as the result of repeated dockings of its ships there to take on oil owned by its parent or an affiliate; (4) that practically all sources of knowledge relating to this accident arise either out of the very site itself or in the minds of witnesses nearly all of whom, except experts, reside in foreign countries, and finally, (5) that to retain jurisdiction here might very well plague this Court with problems of foreign law "all avoided if the case is litigated [in Venezuela] where it arose."

Accordingly, because of the very strong inconvenience to respondent, amounting almost to injustice, which would result from a trial in this District, this Court dismisses jurisdiction in the knowledge that the case can be reinstituted and tried in Venezuela without any bar from a statute of limitations, without prejudice to libellant and without undue inconvenience, prejudice or delay as the result of being tried in a foreign country.

## Supplemental Opinion

On November 12, 1964, this Court filed an opinion dismissing the above entitled action for lack of venue. Motions by libellant, Mobil Tankers Company (hereafter Mobil), to reargue, and by its parent, Socony Mobil Oil Company (hereafter Socony), to intervene, have now been filed.

■ The first ground urged for reargument is the Court's failure to have made any finding of fact to the effect that Socony, Mobil's parent, was the owner of the oil on board the "Mobil Astral" at the time of the fire; that as a result, Socony has a direct interest in this action; and, thus, had the right to join as a party or intevene. As I understand it, there neither is, nor can be, any objection by Mene Grande, to Socony being permitted to intervene as a party. The petition to intervene will be granted.

■ However, I do not regard Socony's presence as a party as altering the substance of the question originally presented by Mene Grande's motion to dismiss for lack of venue. It is not Socony's presence as a party but its interest in the oil cargo which is the important consideration. This interest was as real then as now and was considered at the time. The crux of the matter, as I view it, is the way Socony chose to assert its interest in this cargo. It did not file an independent suit as it might have. It was content to let Mobil sue as bailee. And even in the face of Mene Grande's motion to dismiss, Socony took no action

12. The ease with which foreign law can be confused is demonstrated in this case by the conflicting affidavits of Venezuelan counsel regarding the tax effect of this litigation on Mene Grande.

to join as a party or otherwise intervene in order to assert its position independently. Now that the change of venue has been ordered, it belatedly appears, seeks to join as a party and asks to be heard, all of which is singularly unpersuasive. The implication is strong that the real reason for joining as a party is to face this Court with an American plaintiff seeking to recover on a cause of action arising abroad in which event, in a proper situation, the rule of The Saudades and the M/V Kokei Maru might well be applicable. But I do not think that rule should apply under these circumstances.

Nor do I feel that Socony's right to recover for the oil, if this action is tried in Venezuela, will be in any way affected.[1] If so, I might reach a different result. Mene Grande's Venezuelan counsel has stated that Mobil can join Socony's claim for the oil as bailee with its claim for damages to its ship in a single libel in Venezuela. Mobil's Venezuelan counsel says, on the other hand,[2] that Socony would have to join as a party. In the one case, Socony, as here, could sit back and await the outcome; in the other, it would move to join in as plaintiff in Venezuela and prove the value of the oil, not a very difficult step.

To Socony's argument that, as an American plaintiff having a real interest in the controversy, it prefers to litigate its case before an American court, I can only say that its right in this connection is no higher than that of its subsidiary; that the subsidiary must try its case in Venezuela where, in my judgment, it will receive a fair trial; and that the slight additional inconvenience to Socony in having to join as a party to the Venezuelan suit, if, in fact, it even has to, does not alter the basic equities of the case. To permit this relatively small claim to be a decisive factor in these considerations would amount to letting the tail wag the dog.

The next ground for reargument is that this Court overlooked the fact that libellant was a resident in the United States, and operated its business from offices in New Jersey when this accident happened. The Court did not overlook this fact. The short answer is that over two years prior to the filing of this suit, libellant, a Panamanian corporation, vacated its offices in New Jersey and abandoned its residence in that state and in this country. Socony now, and for several years past, has operated Mobil from New York (Finding of Fact #1).

There is an additional contention that this Court has emphasized Mobil's foreign residence while slurring over Mene Grande's Delaware residence. In its petition for reargument, Mobil says, "A corporate defendant resides primarily in the jurisdiction in which it is incorporated; and for that reason, suit was commenced against respondent in the District of Delaware." Accepting libellant's contention and applying it literally to these facts, then, we have a foreign corporation, Mobil, neither domiciled in, nor a resident of, the United States, instituting suit against Mene Grande, a United States resident, but not domiciled here, based on a cause of action which arose thousands of miles away and where the United States resident *does not* want to litigate the action in this country because of the strong inconvenience to it in so doing. In such a case, the only existing authority Linea De Vapores, S. A. v. The President Polk (see main opinion) seems to support the application of the forum non conveniens doctrine.

Finally, it is said that this Court erred in applying principles of law having to do with 28 U.S.C. § 1404(a) rather than

---

1. Of course, its right to recover either here or in Venezuela depends upon whether or not Mene Grande was negligent.

2. This is the second time where opposing Venezuelan counsel have disagreed as to the law or practice in that country even before the merits of the case have been reached.

applying the law of forum non conveniens. Even a cursory reading of the opinion reveals that this is not correct.

At the risk of repetition, I will say that, in essence, this is a suit between two foreign corporations doing substantially all their business abroad, concerning a cause of action which happened 2000 miles away where, literally, not a single witness as to the negligence charged, except experts, lives in the United States, and where, if tried in this country, the law of a foreign country would control. Even as to damages, the testimony of the two American witnesses in Florida might well be stipulated, and I again point to the difficulty facing an Amercan court in applying the Civil Law of Venezuela where already, in the preliminary phases of this case, the opposing Venezuelan lawyers have on two occasions been in disagreement as to questions of law and practice in their own country.

This has not been an easy question. The facts refuse to allow themselves to be neatly pigeonholed. There is no case on all fours. Of course, if one wishes to view the case superficially as simply a quarrel between two American corporations because they are both American owned, authority could be found for trying the case here. Even so, the hardship on Mene Grande would not change. But if one attempts to analyze the facts of their residence and domicile against the background of their sphere of business operations and in the light, not only of existing law, but of hardship to the respondent, the situation is presented for the exercise of discretion on the part of this Court to decline jurisdiction.

The motion of Socony Mobil Oil Company to intervene is granted.[3]

The motion of Mobil Tankers Company for a reargument is denied.

3. It is not the intention of this Court by permitting Socony Mobil Oil Company to intervene to indicate that, at this very late hour, it can require respondent to answer or otherwise plead or to allow it now to file briefs and reargue the question here decided. It may, of course, participate in an appeal from this decision to the extent that the Circuit Court may allow and, should this opinion be reversed, it may participate in the trial of the action in this Court to the extent which may be hereafter decided.